# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | |
|---|---|
| _____ ) | |
| **Rosamma Stanley** ) | |
| 4505 Glasgow Dr. ) | |
| Rockville, MD 20853 ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | **Case Number:** |
| ) | |
| **Shady Grove SNF, LLC d/b/a Shady Grove** ) | |
| **Nursing and Rehabilitation Center** ) | |
| 9701 Medical Center Dr. ) | |
| Rockville, MD 20850 ) | |
| ) | |
| **And** ) | |
| ) | |
| **Vita Healthcare Group, LLC** ) | |
| 15 America Ave ) | |
| Lakewood, NJ 08701 ) | |
| ) | |
| *Defendants* ) | |

## <u>COMPLAINT</u>

Plaintiff Rosamma Stanley ("Plaintiff"), by and through her designated attorney representatives, Daniel E. Kenney, Esq. and Morris E. Fischer, LLC hereby files this complaint against Shady Grove SNF, LLC d/b/a Shady Grove Nursing and Rehabilitation Center and Vita Healthcare Group, LLC.

Ms. Stanley is an Indian (Asian) woman and dedicated healthcare worker. During her employment with Defendants, for-profit healthcare providers, a group of majority Nigerian nurses and supervisors bullied Plaintiff, retaliated against her, and otherwise made Plaintiff's working conditions untenable due solely to Plaintiff's race and national origin / status as a non-

African.   Defendants and this "bully group" of African employees were motivated by a collective bias against non-African coworkers and created a collective mob to weed out non-Africans, provide special employment treatment to African employees and silence those who reported their behavior.

The environment created by Defendants was vindictive, harassing and based upon Defendants' employees' race and/or national origin.  When Plaintiff had the courage to speak out against the group and the bullying, racism and harassing environment - she was immediately terminated from her job.   The bully group even attempted to frame Plaintiff; by trying to threaten Plaintiff to sign a statement that Defendant had made-up and wouldn't let Plaintiff review.

During the time relevant to this Complaint, Plaintiff's husband has been suffering from debilitating Leukemia.  Defendants' vindictive and callous treatment of Plaintiff throughout her employment and in response to Plaintiff engaging in protected activity has had a lasting and traumatic effect on Plaintiff's post-employment life, career, health and the well-being of her family.

## THE PARTIES

1. Rosamma Stanley (hereinafter referred to as "Plaintiff" or "Stanley") is a resident of the state of Maryland.

2. Plaintiff resides in Rockville, Maryland.

3. At all times relevant to this complaint, Plaintiff was employed and working in the State of Maryland.

4. Plaintiff is over the age of eighteen (18).

5. Defendant Shady Grove SNF, LLC d/b/a Shady Grove Nursing and Rehabilitation Center is a business organization providing therapy and treatment to patients and "residents."

**6.** Shady Grove's principal place of business is in Rockville, Maryland.

7. Shady Grove's corporate headquarters is located in Maryland.

8. Defendant Vita Healthcare Group, LLC is a corporation that owns and operates medical facilities.

9. Defendant Vita Healthcare Group, LLC maintains a principal place of business in Lakewood, New Jersey.

10. Defendant Vita Healthcare Group, LLC has its corporate headquarters in New Jersey.

11. Defendant Vita Healthcare Group, LLC is/was an owner and operator of Shady Grove at all times relevant to this case.

12. Defendant Shady Grove and Vita Healthcare Group, LLC were joint employers over Plaintiff's employment.

13. Both Defendants exercised control over Plaintiff's terms of employment, hours, schedule, compensation and other elements or conditions of Plaintiff's employment.

14. Both Defendants had authority to hire and fire Plaintiff.

15. Both Defendants exercised day-to-day supervision over Plaintiff.

16. Both Defendants furnished the equipment and other implements or tools of Plaintiff's employment.

17. Both Defendants provided Plaintiff with human resources services.

18. Defendant, Shady Grove employs 100 or more employees.

19. Defendant, Vita Healthcare Group, LLC employees 70 or more employees.

## JURISDICTION AND VENUE

20. Plaintiff hereby incorporates all preceding paragraphs as if fully restated herein.

21. The United States District Court for the District of Maryland has jurisdiction over this matter.

22. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331.

23. Plaintiff's claims arise under the laws of the United States.

24. Plaintiff alleges Defendant violated 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*

25. The Court has supplemental jurisdiction over Plaintiff's Maryland state law claims pursuant to 28 U.S.C. §1367 as Plaintiff's supplemental claims are so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

26. The District of Maryland is the appropriate venue in this case pursuant to 28 U.S.C. §1391.

27.  The employment actions and decisions described in this Complaint substantially occurred in Maryland.

28. The corporate actions that form the basis for Plaintiff's claims substantially occurred in Maryland.

29. Upon information and belief, a majority of the witnesses, documents and evidence is located in Maryland.

30. The United States District Court for the District of Maryland has personal jurisdiction over the parties.

## FACTS

31. Plaintiff hereby incorporates all preceding paragraphs as if fully restated herein.

32. Plaintiff is a hardworking and skilled healthcare provider.

33. Plaintiff began working for Defendants as a "long term care provider" in or around early 2020.

34. Among other things, Plaintiff was responsible for providing professional care services for patients/residents.

35. Plaintiff attended to the healthcare of members of Defendants' assisted living community.

36. Plaintiff provided professional services and care for Defendants' patients/residents.

37. Throughout her tenure, Plaintiff's performance in her position was exemplary and Plaintiff did not have any issues with successfully completing the functions of her position.

38. Plaintiff performed in such a way as to meet the legitimate expectations of the position and her employer.

39. Plaintiff's performance was commended by her patients and Plaintiff's patients/residents routinely thanked her for her quality care.

40. Prior to retaliatory and discriminatory actions in this case, Plaintiff had never received any negative performance evaluations, poor performance feedback or any indication that she was not satisfying the functions and expectations of her position.

41. Plaintiff is an Indian (Asian) woman over the age of 40.

42. Plaintiff's race is "Indian (Asian)."

43. Plaintiff's national origin is "Indian."

44. Plaintiff is also disabled as the result of a workplace injury that occurred at Defendants' workplace in May, 2021.

45. Sometime after Plaintiff began employment with Defendant, Plaintiff was supervised by Ms. Bukky Daniels.

46. Ms. Daniels is Nigerian.

47. Throughout her employment, the majority of Plaintiff's supervisors and colleagues were African and/or Nigerian.

48. Once Ms. Daniels became Plaintiff's Director of Nursing, Ms. Daniels organized the other African employees to form a discriminatory mob collective.

49. Ms. Daniels provided special benefits to members of the collective based on the employee's race (African) and/or national origin (African/Nigerian).

50. For example, Ms. Bukky Daniels offered an Indian employee with significant experience $2.00/hour less than a Nigerian employee that had just graduated highschool with no experience.  Ms. Daniels told the Indian applicant that there were no more CMA positions available even though there were CMA positions were open and available  to Nigerian applicants.

51. Ms. Daniels routinely denied overtime to non-Africans, including Plaintiff.  On occasions when Ms. Daniels discovered that Plaintiff had worked or been assigned overtime, Ms. Daniels would call the Human Resources manager and state "no more overtime for [Plaintiff]."

52. Ms. Daniels accused Plaintiff of being "greedy" because she wanted to be assigned overtime hours.

53. Ms. Daniels told Plaintiff that only the African and Nigerian employees were permitted to work overtime.  Ms. Daniels went to staff and told staff not to assign Ms. Stanley overtime.  Ms. Daniels also expressed anger and resentment when Ms. Stanley was permitted to work overtime. However, Ms. Daniels rubber stamped and was happy to provide overtime benefits to Nigerian employees.

54. For example, Ms. Dupe (African / Nigerian), an employee similarly situated to Plaintiff, was provided overtime opportunities by Ms. Daniels under such circumstances that are indicative of discrimination.

55. Ms. Daniels demeaned Plaintiff and/or called her names.

56. Ms. Daniels (Nigerian), Ms. Dupe (Nigerian), Ms. Tomiwa (African) and Ms. Temilola (Nigerian) engaged in harassing behavior/hostile work environment towards Plaintiff.

57. Ms. Daniels told Plaintiff "I am tired of you."

58. Ms. Daniels told Plaintiff she ran the Defendants' business "to hell."

59. Ms. Daniels told Plaintiff "I don't like you."

60. Ms. Daniels told Plaintiff "I don't like your body language."

61. Ms. Daniels words and insults to Plaintiff were code for a discriminatory animus.

62. On or about July 24, 2021, Ms. Stanley was asked to work for July 25, 2021  (her off day) for two shifts: 7am to 3pm and 3pm to 11pm.   Plaintiff was assigned to these shifts by Defendants' shift manager.

63. Plaintiff arrived at work.

64. Plaintiff completed her assigned shifts.

7

65. Part of the African group of employees, Ms. Daniels (Director Nursing) Tomilola (Nigerian) and Ms. Dupe were upset that Plaintiff had been scheduled as a CMA for July 25, 2021.

66. Because, if Plaintiff was scheduled as the CMA, Plaintiff had the benefits of CMA status.

67. The African group of employees wanted an African employee scheduled as a CMA, i.e., Ms. Dupe so that the Nigerian employees can receive additional benefits.

68. Plaintiff previously complained to Human Resources alleging that she had been subjected to harassment and hostile work environment and/or discriminated against on the basis of her race and national origin.

69. On July 26, 2021, the following day, Ms. Daniels called Plaintiff into a meeting where Ms. Dupe was present and yelled at Plaintiff, and made false allegations.

70. During the meeting, Ms. Daniels told Plaintiff that "she wasn't afraid of anybody."

71.  Ms. Daniels' was aware that Plaintiff had complained of discrimination on the basis of race and national origin her statement implied that she was not afraid of Plaintiff lodging an unlawful employment practices complaint.

72. Ms. Daniels told Plaintiff "I will do whatever I want."

73. Plaintiff told Ms. Daniels that the shift supervisor had scheduled her for the July 25, 2021 shifts and that if she called the shift supervisor she would provide her the same information. Ms. Daniels then verbally suspended Plaintiff for three days.

74. Defendants have not suspended similarly situated non-complaining and/or African / Nigerian employees in a similar manner or under similar circumstances.

75. On July 28, 2021, Plaintiff engaged in protected activity under Title VII, 42 U.S.C. §1981, the Maryland Fair Employment Practices Act and the Montgomery County Code when she complained to Defendants corporate Human Resources officer about unlawful discrimination on the basis of her race and national origin.

76. Defendants and Defendants' agents / employees were aware that Plaintiff had engaged in protected activity.

77. Two days later, on July 30, 2021, Plaintiff was called into a meeting.  At this meeting, Plaintiff was told we "know you complained to Human Resources Corporate" or words to that effect.

78. Plaintiff was then told, you should "be careful what you wish for."

79. At the table, Defendants executives read Plaintiff a statement that Defendants had prepared placing Plaintiff on a "Performance Improvement Plan" and falsely admitting certain facts and/or denying that Plaintiff had been harassed and discriminated against.

80. Defendants then handed Plaintiff a signature page.

81. Defendants refused to let Plaintiff review or read what Defendants told Plaintiff to sign.

82. Defendants told Plaintiff that she could either sign the document and be placed on a Performance Improvement Plan or Plaintiff would be "fired and escorted out the door by security."

83. Defendants' employee, Mr. Riley (administrator), told Plaintiff "if you do not want to sign it without reading then we have to terminate you and escort you out of the building now."

84. Mr. Riley and another Defendants' employee, Ms. Kaye (HR manager) escorted Plaintiff out of the building.

85. Plaintiff was terminated from employment on July 30, 2021.

86. Plaintiff made an additional protected complaint to Defendants Human Resources office following Plaintiff's termination concerning unlawful discrimination and retaliation.

87. Plaintiff received a phone call from Mr. Riley on August 2, 2021 telling Plaintiff that she was terminated again, as of August 2, 2021, even though Defendant had previously fired Plaintiff on July 30, 2021.

88. Plaintiff's supervisors and other employees with knowledge of Plaintiff's protected activity were responsible for the decision to terminate Plaintiff's employment.

89. Plaintiff was terminated in retaliation for engaging in protected activity.

90. Plaintiff was suspended in retaliation for engaging in protected activity.

91. Plaintiff was threatened with termination and/or placement on a Performance Improvement Plan for engaging in protected activity.

92. Plaintiff was terminated in retaliation for engaging in protected activity.

93. Plaintiff was suspended in retaliation for engaging in protected activity.

94. Plaintiff was threatened with termination and/or placement on a Performance Improvement Plan for engaging in protected activity.

95. Plaintiff was terminated as discrimination on the basis of Plaintiff's race and/or national origin.

96. Plaintiff was suspended on the basis of Plaintiff's race and/or national origin.

97. Plaintiff was threatened with termination and/or placement on a Performance Improvement Plan on the basis of Plaintiff's race and/or national origin.

98. Plaintiff has satisfied all administrative prerequisites to filing this suit.

99. Plaintiff timely filed complaints with the Equal Employment Opportunity Commission, the Maryland Commission on Civil Rights and the Montgomery County Office of Human Rights and the Equal Employment Opportunity Commission.

**COUNT I –RACE DISCRIMINATION**

**VIOLATION OF MARYLAND CODE, STATE GOVERNMENT TITLE 20-601, *et seq.*, The MONTGOMERY COUNTY CODE §27, *et seq.*, TITLE VII of the CIVIL RIGHTS ACT of 1964, §2000(e), *et seq. and* 42 U.S.C. §1981**

100. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein. Plaintiff has exhausted all administrative remedies with respect to Count I.

101. Plaintiff is a member of a protected class.  Plaintiff's race is Indian (Asian).

102. Defendants were aware that Plaintiff is a member of a protected class.

103. At all times relevant to this complaint, Plaintiff has maintained satisfactory job performance.

104. Plaintiff suffered an adverse action in the form of termination, threatened termination, suspension, failure to pay overtime, harassment, disciplinary warnings, lost wages and benefits and other actions.

105. Defendant took adverse employment actions against Plaintiff because of Plaintiff's race.

106. Defendant was motivated by Plaintiff's race in taking the aforementioned adverse employment action.

11

107. The aforementioned adverse employment actions give rise to an inference of discrimination.

108. Defendants' actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), *et seq.*, the Maryland Code, State Government Title 20-601, *et seq.*, the Montgomery County Code, §27, *et seq.* and 42 U.S.C. §1981.

109. Defendants did not make good-faith efforts to comply with any anti-retaliation policy.

110. Defendants are subject to punitive damages and capable of paying a punitive damages award.

111. As a proximate result of Defendants' actions, Plaintiff suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries and will suffer severe damages and injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to her professional reputation.

112. As a proximate result of Defendants' actions, Plaintiff suffered damages in the form of lost wages, lost compensation, future lost earnings, economic losses, future loss of retirement benefits and other unliquidated damages.

113. Plaintiff seeks an award of damages for back-wages, front-wages, lost benefits, pecuniary damages, non-pecuniary damages, compensatory damages, injunctive relief (including reinstatement and/or front wages), attorneys' fees and costs and all other available relief under the law.

## COUNT II –NATIONAL ORIGIN DISCRIMINATION

### VIOLATION OF MARYLAND CODE, STATE GOVERNMENT TITLE 20-601, *et seq.*, The MONTGOMERY COUNTY CODE §27, *et seq.*, TITLE VII of the CIVIL RIGHTS ACT of 1964, §2000(e), *et seq.*

114. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein. Plaintiff has exhausted all administrative remedies with respect to Count II.

115. Plaintiff is a member of a protected class.  Plaintiff's National Origin is Indian (Asian).

116. Defendants were aware that Plaintiff is a member of a protected class.

117. At all times relevant to this complaint, Plaintiff has maintained satisfactory job performance.

118. Plaintiff suffered an adverse action in the form of termination, threatened termination, suspension, failure to pay overtime, harassment, disciplinary warnings, lost wages and benefits and other actions.

119. Defendant took adverse employment actions against Plaintiff because of Plaintiff's race.

120. Defendant was motivated by Plaintiff's race in taking the aforementioned adverse employment action.

121. The aforementioned adverse employment actions give rise to an inference of discrimination.

122. Defendants' actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e)*, et seq.*, the Maryland Code, State Government Title 20-601, *et seq.* and the Montgomery County Code, §27, *et seq.*

123. Defendants did not make good-faith efforts to comply with any anti-retaliation policy.

124. Defendants are subject to punitive damages and capable of paying a punitive damages award.

125. As a proximate result of Defendants' actions, Plaintiff suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries and will suffer severe damages and injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to her professional reputation.

126. As a proximate result of Defendants' actions, Plaintiff suffered damages in the form of lost wages, lost compensation, future lost earnings, economic losses, future loss of retirement benefits and other unliquidated damages.

127. Plaintiff seeks an award of damages for back-wages, front-wages, lost benefits, pecuniary damages, non-pecuniary damages, compensatory damages, injunctive relief (including reinstatement and/or front wages), attorneys' fees and costs and all other available relief under the law.

## COUNT III – RETALIATION

**VIOLATION OF MARYLAND CODE, STATE GOVERNMENT TITLE 20-601, *et seq.*, The MONTGOMERY COUNTY CODE §27, *et seq.*, TITLE VII of the CIVIL RIGHTS ACT of 1964, §2000(e), *et seq. and* 42 U.S.C. §1981**

128. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein. Plaintiff has exhausted all administrative remedies with respect to Count III.

129. Plaintiff engaged in protected activity.

130. Plaintiff engaged in opposition and participation activity under MFEPA, 42 U.S.C. §1981, the Montgomery County Code and Title VII.

131. Plaintiff had a good faith belief that he was opposing activity prohibited by the aforementioned statutes.

132. Plaintiff had a reasonable belief that she was opposing activity prohibited by the aforementioned statutes.

133. Defendants were aware of Plaintiff's protected opposition and participation activity.

134. Plaintiff has suffered adverse actions, including disciplinary actions that affect the terms, conditions, benefits and pay, loss of leave benefits, a materially increased workload and termination.

135. Plaintiff's disciplinary actions were a factor in Plaintiff's termination and had a material impact on the terms and conditions of Plaintiff's employment, including but not limited to: salary, promotions, retention, continued employment, bonuses, assignments and other material aspects of Plaintiff's employment.

136. Plaintiff was suspended, threatened with termination, placed on a "PIP" an discharged from employment because of her protected activity.

137. Defendants retaliated against Plaintiff by subjecting her materially adverse actions including: termination, threatened termination, a performance improvement plan, suspension, failure to pay overtime and other actions affecting the terms and conditions of Plaintiff's employment.

138. The material adverse actions had a material impact on the terms and conditions of Plaintiff's employment, including but not limited to: salary, promotions, retention, continued employment, bonuses, assignments and other material aspects of Plaintiff's employment.

139. There is a causal connection between Plaintiff's protected activity and the adverse actions Plaintiff has suffered.

140. Defendants took adverse actions against Plaintiff in whole, or in part, because of Plaintiff's protected activity.

141. Plaintiff's protected activity was a motivating factor in the decisions to take adverse actions against Plaintiff.

142. Defendants' actions violated Title VII of the Civil Rights Act of 1964 and the Maryland Code, State Government Title 20-601, *et seq.* "Maryland Fair Employment Practices Act." (MFEPA), the Montgomery County Code §27, *et seq.* and 42 U.S.C. §1981.

143. Defendants did not make good-faith efforts to comply with any anti-retaliation policy.

144. Defendants are subject to punitive damages and capable of paying a punitive damages award.

145. As a proximate result of Defendants' retaliation, Plaintiff suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries and will suffered severe damages and injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to her professional reputation.

146.  As a proximate result of Defendants' retaliation, Plaintiff suffered damages in the form of lost wages, lost compensation, future lost earnings, economic losses, future loss of retirement benefits.  Plaintiff seeks an award for back-wages, front-wages, lost benefits, pecuniary damages, non-pecuniary damages, compensatory damages, injunctive relief (including reinstatement and/or front wages) attorneys' fees and costs and all other available relief under the law.

**COUNT IV – PUBLIC POLICY**

**Wrongful Termination in Violation of Maryland Public Policy**

147.  Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

148.  Defendants terminated Plaintiff in contravention of a clear mandate of public policy.

149.  The State of Maryland has expressed the following public policies applicable to Plaintiffs employment:  The State of Maryland has expressed a clear public policy in favor of employees who have a work related injury and desire to seek or file a claim workers compensation benefits.

150.  Plaintiff suffered a work-related injury and notified Defendants.  Defendants were aware that Plaintiff was or would seeks or file for workers compensation benefits.

151.  Plaintiff was terminated in whole or in part because of Plaintiff's protected activity and in violation of a clear public policy mandate exists in the State of Maryland which protects employees from a termination based the seeking or potential to seek work-injury related workers compensation benefits.

152.  There is a nexus between Plaintiffs protected activity and Plaintiff's termination.

153.  Plaintiff attempted to exercise a statutory duty, right or privilege.

154.  Plaintiff was terminated for exercising or attempting to exercise a statutory duty, right or privilege.

155.  Defendant acted willfully and maliciously

156.  Plaintiff suffered pecuniary and non-pecuniary damages as result of his wrongful termination.

157.  Plaintiff suffered a materially adverse action.

158. There is a causal nexus between these material adverse actions and Plaintiffs protected activity and/or Plaintiffs status as a whistleblower or perceived whistleblower.

159. At all times relevant to this case, Defendant was acting in furtherance of Defendants' business.

160. Because of Defendant's actions, Plaintiff has suffered damages  including:

backwages, front-wages, consequential damages, compensatory damages, punitive damages, attorneys fees, costs, prejudgment interest, post-judgment interest.

161. Plaintiff hereby seeks an award of attorney's fees, costs, compensatory and consequential damages, backpay, front-pay, reinstatement, punitive damages, injunctive relief and any and all other relief available under the law.


**COUNT V – AGE DISCRIMINATION (RETALIATION)**

**RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, MD STATE GOVERNMENT ARTICLE §20-606, *et seq*  and the MONTGOMERY COUNTY CODE CH. 27-19**

162. Plaintiff hereby adopts and incorporates all aforementioned paragraphs as if herein stated.

163. Plaintiff engaged in protected activity under Md. State Government Article §20-606, *et seq*., the Montgomery County Code, Ch. 27-19 and the Age Discrimination in Employment Act.

164. Plaintiff held the reasonable belief that she was opposing unlawful employment activity under the aforementioned statutes.

165. Defendants were aware that Plaintiff was opposing what she reasonably believed was unlawful employment activity.

18

166. Defendants retaliated against Plaintiff because of, in whole or in part, and/or motivated by her opposition activity in violation of Md. State Government Article §20-606, et seq.. the Montgomery County Code, Ch. 27-19, Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act.

167. Defendants violated Md. State Government Article §20-606, et seq. the Montgomery County Code, Ch. 27-19 and the Age Discrimination in Employment Act when Defendant's failed to pay Plaintiff a wage, suspended Plaintiff and terminated Plaintiff's employment.

168. Plaintiff suffered adverse employment actions as the result of Defendants' retaliation.

169. There is a causal connection between Plaintiff's protected activity and the adverse actions suffered by Plaintiff.

170. Defendant acted because of or was motivated by Plaintiff's protected activity in causing Plaintiff to suffer adverse employment actions.

171. Defendant retaliated against Plaintiff because of Plaintiff's protected activity.

172. Defendant acted willfully and maliciously.

173. Defendant did not make good-faith efforts to comply with any anti-retaliation policy.

174. Defendant is subject to punitive damages and capable of paying a punitive damages award.

### COUNT VI – AGE DISCRIMINATION

**AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, MD STATE GOVERNMENT ARTICLE §20-606, *et seq* and the MONTGOMERY COUNTY CODE**

175. Plaintiff hereby adopts and incorporates all aforementioned paragraphs as if herein stated.

176.  Defendants discriminated against Plaintiff on the basis of her age (over 40) in violation of Md. State Government Article §20-606, *et seq.* the Montgomery County Code, Ch. 27-19 and the Age Discrimination in Employment Act.

177.  Plaintiff was over the age of 40 at all times relevant to this complaint.

178.  Plaintiff is a member of a protected class.

179.  At the time that Plaintiff was suspended and/or terminated, Plaintiff was satisfactorily performing the functions of her position at a level that met the employers' expectations

180.  Defendant was motivated by Plaintiffs' age in making the decision to discipline, suspend and/or terminate Plaintiff.

181.  Plaintiff was suspended and/or terminated because of her age.

182.  Plaintiff suffered adverse employment actions because of her age.

183.  Defendant did not make good-faith efforts to comply with any anti-retaliation policy.

184.  Defendant is subject to punitive damages and capable of paying a punitive damages award.

185.  Upon information and belief, Plaintiff was replaced with someone outside of Plaintiff's protected class.

186.  Defendant's actions were willful and/or malicious.

187.  Plaintiff has administratively exhausted all prerequisites to filing suit.  Plaintiff timely filed charges with the MCOHR, EEOC and MCCR.  More than 180 days have passed since the filing of said charges.

188. For Count IV, Plaintiff seeks damages, including: compensatory damages, punitive damages, pre-judgment interest, post-judgment interest, attorneys fees, costs, injunctive relief, and any other civil relief as authorized by State and Federal law.

189. Plaintiff seeks judgment on Count IV in an amount in excess of $75,000.

**WHEREFORE,** Plaintiffs demands judgment against Defendant for the following relief on all Counts:

a) Damages in excess of $75,000.00 on each and all Counts.

b) Damages on each and all Counts comprising of: economic losses, back wages, front wages, compensatory damages, punitive damages, expectation damages, consequential damages, nominal damages, pre and post judgment interest, attorneys fees and costs, expert witnesses fees, reinstatement at the same or equivalent position, removal of any adverse personnel records or entries, reinstate full fringe benefits and seniority, and any other affirmative relief that may be deemed appropriate at trial;

(c) An injunction to restrain any continuing violations by Defendant;

(d) Reinstatement to the same seniority status held before the unlawful actions;

(e) Reinstatement of full fringe benefits and seniority rights;

(f) An assessment of a civil penalty:

(g) Any other relief necessary to make the Plaintiff whole.

(h) Such other relief as the court deems proper and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts.

21

Respectfully submitted,


*/s/ Daniel E. Kenney, Esq.*

Daniel E. Kenney, Esq.
Bar No. 18369
DK Associates, LLC
5425 Wisconsin Avenue, Suite 600
Chevy Chase, MD 20815
202-430-5966 Phone
dan@dkemployment.com